UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SPECIALIZED PHARMACY SERVICES,
LLC et al.

        Plaintiffs/Counter-Defendants      Case No.: 12-12785
                                                           Honorable Thomas L. Ludington

        v.

MAGNUM HEALTH AND REHAB OF
ADRIAN, LLC et al.

        Defendants/Counter-Plaintiffs

        and

MAGNUM HEALTH AND REHAB OF
ADRIAN, LLC et al.

        Third-Party Plaintiffs,

        v.

EXTENDICARE HEALTH SERVICES, INC.
And OMNICARE, INC.

        Third-Party Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART
PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS**

Defendants[1] operate a number of long-term-care nursing facilities located throughout Michigan. Each facility requires pharmaceutical products, training services, and medical

---

[1] The following parties comprise the Defendants/Counter-Plaintiffs (Defendants) in this action: Magnum Health and Rehab of Adrian, LLC, d/b/a Magnumcare of Adrian, LLC (Adrian); Magnum Health and Rehab of Albion, LLC, d/b/a Magnumcare of Albion, LLC (Albion); Magnum Health and Rehab of Hastings, LLC, d/b/a Magnumcare of Hastings, LLC (Hastings); Magnum Health and Rehab of Monroe, LLC, d/b/a Magnumcare of Monroe, LLC (Monroe); and Magnum Health and Rehab of Saginaw, LLC, d/b/a Magnumcare of Saginaw, LLC (Saginaw).

supplies to function. To meet those demands, Defendants contracted with Plaintiffs[2] to supply the necessary prescription and nonprescription pharmaceuticals, parenteral nutritional products, intravenous supplies, and related services.[3]

Plaintiffs claim that Defendants, despite accepting supplies and services for years, failed to pay. Plaintiffs allege that as of May 31, 2012, Defendants owe SPS and TCPI a total of $814,037.40[4] for the pharmaceutical products, goods, or services that were provided. Further, Plaintiffs claim that as of June 25, 2012, Defendants owe Royal $55,315.96[5] for medical supplies that were delivered but never paid for.

In order to recover those payments, Plaintiffs filed this lawsuit on June 25, 2012, alleging various claims related to breach of contract.[6] After Plaintiffs filed an amended complaint on June 29, 2012, Defendants responded with a counterclaim against Plaintiffs and a third-party complaint against Omnicare, Inc. (Omnicare)[7] and Extendicare Health Services, Inc. (Extendicare). *See* Defs.' Answer, ECF No. 20. Eventually, on November 30, 2012, Defendants filed an amended answer with an amended counterclaim, dropping the third-party complaint. Defendants' amended counterclaim — as to all Plaintiffs — alleges three causes of action: breach of contract, unjust enrichment, and civil conspiracy. *See* Defs.' Am. Countercl. ¶¶ 23–39, ECF No. 61.

---

[2] Plaintiffs/Counter-Defendants (Plaintiffs) include: Specialized Pharmacy Services, LLC, d/b/a Specialized Pharmacy Services – North, d/b/a Specialized Pharmacy Services (SPS); TCPI Acquisition Corp., d/b/a Specialized Pharmacy Services – West (TCPI); and Royal Care of Michigan, LLC (Royal).

[3] Related services include, without limitation, staff training and education programs related to pharmaceutical products, medical records maintenance, provision of a clinically based drug formulary, and disease management programs. *See* Pls.' Am. Compl. ¶ 3.

[4] Comprised of: $195,892.16 owed by Adrian; $94,814.58 owed by Albion; $179,176.68 owed by Hastings; $190,723.60 owed by Monroe; and $153,430.38 owed by Saginaw.

[5] Comprised of: $3,085.51 owed by Adrian; $15,165.76 owed by Albion; $12,113.17 owed by Hastings; $7,795.90 owed by Monroe; and $17,155.62 owed by Saginaw.

[6] Along with their two breach-of-contract claims, Plaintiffs allege claims for an account stated (Count III); third-party beneficiary (Count IV); unjust enrichment (Count V); assumpsit/goods sold and delivered (Count VI); and lost profits (Count VII). *See* Pls.' Am. Compl. ¶¶ 61–89.

[7] Each Plaintiff is an affiliate or subsidiary of Omnicare, Inc. *See* Pls.' Am. Compl. ¶ 5.

Plaintiffs moved to dismiss Defendants' claim for civil conspiracy and the following affirmative defenses: duress, business compulsion, and breach of the duty of good faith and fair dealing. Plaintiffs' motion will be granted in part and denied in part.

**I**

Through the end of 2009, the nursing-care facilities at issue were not yet in Defendants' possession. Instead, the facilities were owned and operated by Extendicare and its wholly owned subsidiaries: Tendercare of Albion Limited Partnership; Tendercare Holdings Limited Partnership; Tendercare Primary Properties, Inc.; Beach Nursing Home, Inc.; and Tendercare (Michigan), Inc. (collectively, the "Sellers").

During the beginning of 2010, the Sellers began negotiating the sale of a number of long-term-care facilities — including the Adrian, Albion, Hastings, Monroe, and Saginaw facilities (the "Facilities") — with the following limited liability companies: MI Adrian Holdings, LLC; MI Albion Holdings, LLC; MI Clare Holdings, LLC; MI Hastings Holdings, LLC; MI Monroe Holdings, LLC; MI Saginaw Holdings, LLC; OH Arbors Holdings, LLC; and 576 Latrobe, LLC (collectively, the "PropCos"). The parties negotiated for over ten months prior to closing on a several-million-dollar transaction.

Consistent with an industry-wide practice, the real-estate was purchased independently from the operation of the Facilities themselves. Consequently, the PropCos and the Sellers entered into Asset Purchase Agreements (APAs) which governed the sale of the Facilities and surrounding lands. The Sellers then executed independent Operations Transfer Agreements (OTAs) with Defendants, which were incorporated into the APAs. Ownership of the Facilities was thus transferred to the PropCos, while the operation of the Facilities was transferred to Defendants, who have since operated the Facilities and provided care for the residents.

One condition-precedent to the Sellers' obligations under the APAs required each Defendant to enter into a Standard Facility Pharmacy Services Contract (SFPS Contract) with Omnicare or its affiliates (Plaintiffs), "for a period of three (3) years, on terms substantially similar to the current Standard Facility Pharmacy Services Contracts in place at each Facility." APA ¶ 10.5, *attached as* Pls.' Mot. Ex. E, at 1-Ext-000049.[8]

Pursuant to the APAs, transfer of the Facilities' operations from the Sellers to Defendants was set for closing on August 1, 2010, and was then pushed back to August 4, 2010. In accordance with their obligations under the APAs, Defendants executed the following contracts with SPS:

- Adrian executed an SFPS agreement with SPS on August 4, 2010;
- Albion executed an SFPS agreement with SPS on August 4, 2010;
- Hastings executed an SFPS agreement with SPS on August 4, 2010;
- Monroe executed an SFPS agreement with SPS on August 4, 2010;
- Saginaw executed an SFPS agreement with SPS that was effective as of May 1, 2011.

Defs.' Am. Countercl. ¶ 19. Defendants claim, however, that they did not receive copies of the former pharmacy agreements "until shortly before the closing deadline," *id.* at ¶ 17, limiting their ability to negotiate the new SFPS Contracts.

Although Defendants now dispute the validity of the SFPS Contracts they entered into with SPS, they also claim that "[i]n the event the [SFPS] Contracts are valid and enforceable, [Plaintiffs] failed to satisfy their obligations under the [SFPS] Contracts." *Id*. Specifically,

---

[8] Although copies of the APAs were not attached to the pleadings, the copy filed under seal corresponding with Plaintiffs' motion to dismiss can be considered without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). While generally "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997), "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* at 89 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The APAs are referenced multiple times in Defendants' counterclaim, and are central to their claims. Accordingly, the copy of the APA filed under seal will be considered for purposes of this opinion.

Defendants allege that the "belated delivery" of the former pharmacy services contracts precluded sufficient time to review those contracts with Defendants' accounting department or counsel, prevented Defendants' from negotiating the terms and conditions of the new SFPS Contracts, and foreclosed their ability to seek pharmacy contracts from competitors whose terms would have been more favorable. *Id*. at ¶ 20.

Defendants further allege that, "[u]pon information and belief, the [Plaintiffs] knowingly did not provide [Defendants] with the Pharmacy Services Contracts with sufficient time to review and negotiate said contractual terms, either on its own volition or in concerted action with other individuals and/or entities." *Id*. at ¶ 21. According to Defendants, it was Plaintiffs' "knowing and devised plan . . . to keep the terms of the alleged contracts from [Defendants]." *Id*. at ¶ 22.

In response to Defendants' amended answer and counterclaim, Plaintiffs filed a motion to dismiss Defendants' claim for civil conspiracy pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike three affirmative defenses.

## II

Under Federal Rule of Civil Procedure 8, a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe

the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true. *Twombly*, 550 U.S. at 570.

As to Defendants' affirmative defenses, Federal Rule of Civil Procedure 12 provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Of course, "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (ellipsis deleted) (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1274)).

### III

Plaintiffs argue that Defendants' counterclaim for civil conspiracy and three related affirmative defenses must be dismissed. Each is addressed below.

### A

As a preliminary matter, the Court acknowledges that it has jurisdiction over this action pursuant to diversity. Pls.' Am. Compl. ¶ 14; Defs.' Am. Answer ¶ 14; *see also* 28 U.S.C. § 1332. As has long been established, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996). Further, courts must apply the substantive law of the state in which the court sits. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). Here, that state is Michigan, and the parties' claims are therefore governed by Michigan law.

**B**

Plaintiffs first allege that Defendants' counterclaim for civil conspiracy does not "meet the pleading standard" outlined in *Iqbal* and *Twombly* and, as a result, "must be dismissed." Pls.' Mot. 12. Plaintiffs are correct, and their motion will be granted on this issue.

In support of their civil conspiracy claim, Defendants argue that "Plaintiffs and/or their parent, Omnicare, refused to provide Defendants with copies of the [previous pharmacy services contracts] in a timely manner because they did not want Defendants to have an opportunity to fairly negotiate the prices and terms of the [SFPS Contracts]." Defs.' Resp. 4, ECF No. 71. Specifically, Defendants maintain two alternate possibilities to support their claim for civil conspiracy:

> It is entirely plausible that Plaintiffs and Omnicare participated in an agreement or understanding to refuse to provide Defendants copies of the [previous contracts] as a part of a scheme with Extendicare to coerce Defendants into executing the [SFPS Contracts] without a reasonable time to negotiate certain terms, including pricing prior to the closing. As part of a further conspiracy, it is entirely plausible that Plaintiffs and Omnicare subsequently participated in an agreement to breach the [SFPS Contracts] by overcharging Defendants for services and failing to provide adequate service.

*Id.* at 9.

In Michigan, a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Temborius v. Slatkin*, 403 N.W.2d 821, 827–28 (Mich. Ct. App. 1986) (per curiam) (citing *Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 730 (Mich. Ct. App. 1985)). Notably, a claim for civil conspiracy may not exist in the air; "rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (quoting *Early Detection Center, PC v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986)). Here, along

with their claim for civil conspiracy, Defendants assert claims for breach of contract and unjust enrichment. Because neither is an actionable tort under these circumstances, Defendants' civil conspiracy claim will be dismissed.

**1**

Plaintiffs' alleged breach of the SFPS Contracts, even if true, does not give rise to an action in tort, nor does it support a claim for civil conspiracy. Although Defendants claim "Michigan law permits non-tort actions, specifically actions for breach of contract, as permissible theories of liability to support actions for civil conspiracy," Defs.' Resp. 15, Defendants are mistaken.[9]

Whether a party states an actionable tort claim arising out of an alleged breach of contract depends on the nature of a plaintiff's allegations. "Michigan courts distinguish between a claim that the defendant *performed* certain contractual obligations *with active negligence*, and a claim that the defendant *failed to perform* his contractual obligations." *Fortenberry v. Jenkins-Dick Corp.*, No. 242225, 2003 WL 22849770, at *4 (Mich. Ct. App. Dec. 2, 2003) (collecting cases) (emphasis in original). "[N]o independent tort claim arises solely from a defendant's failure to perform his contractual obligations." *Id.* (citing *Derbabian v. S & C Snowplowing, Inc.*, 644 N.W.2d 779, 785–86 (Mich. Ct. App. 2002) (holding that an action in tort does not lie based solely on nonperformance of a contractual duty); *Freeman-Darling, Inc. v. Andries-Storen-*

---

[9] Defendants cite to *Northern Plumbing & Heating v. Henderson Bros.*, 268 N.W.2d 296, 298 (Mich. Ct. App. 1978) for the proposition that Michigan courts have acknowledged "the existence of a conspiracy to breach contract." Defs.' Resp. 15. Of course, in *Northern Plumbing*, the plaintiff also alleged tortious interference with an existing contract and tortious interference with advantageous business relationships, both actionable torts. 268 N.W.2d at 298–99. It was these tort claims that supported the claim for a conspiracy "to cause a breach of [] contract." *Id.* at 298. A simple breach of contract claim, standing alone, does not support a claim for conspiracy.

Defendants also cite *Mays v. Three Rivers Rubber Corp.*, 352 N.W.2d 339 (Mich. Ct. App. 1984) and argue that the court "upheld plaintiff's theory of conspiracy . . . where there was no underlying tort claim." Defs.' Resp. 15, n.10. The assertion is inaccurate. The Michigan Appeals Court affirmed the trial court's dismissal of the plaintiff's conspiracy claim due to the applicable statute of limitations, *Mays*, 352 N.W.2d at 342, and thus had no reason to discuss the lack of an underlying tort to support the action.

*Reynaert Multi Group, Inc.*, 382 N.W.2d 769, 770 (Mich. Ct. App. 1985) (per curiam) (distinguishing between contract misfeasance and nonfeasance, where only the former gives rise to an action in tort); *Hart v. Ludwig*, 79 N.W.2d 895, 896–97 (Mich. 1956) (same)). In sum, to support an action in tort, "[*t*]*here must be some breach of duty distinct from breach of contract*." *Fortenberry*, 2003 WL 22849770, at *4 (emphasis in original) (quoting *Hart*, 79 N.W.2d at 897).

The allegations Defendants offer to support their breach of contract claim may not be elevated beyond a simple failure to perform a contractual obligation. Defendants' amended counterclaim alleges that Plaintiffs breached the SFPS Contracts by improperly billing or overbilling for goods and services, and by providing unsatisfactory service. *See* Defs.' Am. Countercl. ¶¶ 23–26. Defendants conclude that Plaintiffs have not complied "with commercially reasonable behavior." *Id.* at ¶ 27. Defendants offer nothing to demonstrate that Plaintiffs performed negligently, or that Plaintiffs breached anything but a contractual duty. Accordingly, the alleged breach of contract is not grounds for a civil conspiracy claim.

**2**

As with Defendants' claim for breach of contract, their unjust enrichment claim does not support an action for civil conspiracy, as it is not actionable.

Under Michigan law, in order to sustain a claim for unjust enrichment, a plaintiff must establish: "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006) (citing *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 798 (Mich. Ct. App. 1993)). If a defendant has been unjustly enriched at a plaintiff's expense, "the law will imply a contract to prevent unjust enrichment." *Morris Pumps*, 729 N.W.2d at 904.

However, Michigan courts have made clear that the existence of an express contract bars an unjust enrichment claim. *Id.* at 906 (citing *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003)). This is because "a contract cannot be implied when an express contract already addresses the pertinent subject matter." *Ligget Rest. Group, Inc. v. City of Pontiac*, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003) (footnote omitted).

In this case, the SFPS Contracts between Plaintiffs and Defendants provided for the circumstance where one of the parties failed to fulfill their contractual obligations. *See* SFPS Contracts ¶¶ 4.2, 8.7, *attached as* Pls.' Compl. Ex. A. Such an express contract precludes Defendants from seeking relief under an implied contract theory like unjust enrichment. *See Ligget*, 676 N.W.2d at 639; *see also Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App. 2009) (a contract will be implied to support an unjust enrichment claim "only if there is no express contract covering the same subject matter."). Because Plaintiffs and Defendants executed a contract governing their contractual relationship, Defendants are barred from bringing a claim for unjust enrichment.[10]

Absent an underlying actionable tort, Defendants' counterclaim for civil conspiracy will be dismissed. *See Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 359 (Mich. Ct. App. 1992); *Early Detection Center, P.C. v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986) ("since plaintiffs have failed to state any actionable tort theories . . . the conspiracy theory must also fail.").

## C

Plaintiffs also argue that three of Defendants' affirmative defenses — duress, business compulsion, and breach of the duty of good faith and fair dealing — also fail as a matter of law.

---

[10] As Plaintiffs' motion relates to Defendants' counterclaim for civil conspiracy, and not unjust enrichment, the unjust enrichment claim will not be dismissed at this point, although the Court notes that legal authority for the claim is lacking.

Plaintiffs are correct as to the first two, and they will be stricken, but the third will remain. For now.

Federal Rule of Civil Procedure 12 provides that a party may move to strike a pleading within 21 days of being served. Fed. R. Civ. P. 12(f). Here, Defendants filed their amended answer, which contains the previous three affirmative defenses, on November 30, 2012. Plaintiffs filed their motion to dismiss (including the request that the defenses be stricken), on December 17, 2012. Accordingly, Defendants' motion is timely, and proper for consideration.

Noted previously, an affirmative defense will be sufficient "as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence*, 182 F. App'x at 456 (citation omitted); *see also Davis v. Sun Oil Co.*, 148 F.3d 606, 612 (6th Cir. 1998). Further, the Sixth Circuit has established,

> Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice. The motion to strike should be granted only when the pleading to be striken [sic] has no possible relation to the controversy.

*Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (citations omitted). Courts disfavor motions to strike because they propose "a drastic remedy." *Wrench LLC v. Taco Bell Corp.*, 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998) (quoting *Resolution Trust Corp. v. Vanderweele*, 833 F. Supp. 1383, 1387 (N.D. Ind. 1993)).

However, a court has "liberal discretion" to strike such filings as it deems appropriate under Rule 12(f). *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citation omitted); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.37[1] (3d ed.2006). Thus, a motion to strike an affirmative defense under Rule 12(f) "is proper if the defense is insufficient; that is, if 'as a matter of law, the defense cannot succeed under any circumstances.'"

*United States Sec. & Exch. Comm'n. v. Thorn*, No. 2:01-CV-290, 2002 WL 31412440, at *2 (S.D. Ohio Sept. 30, 2002) (quoting *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997). Such a motion is also proper "if it aids in eliminating spurious issues before trial, thereby streamlining the litigation." *Thorn*, 2002 WL 31412440, at *2.

The decision whether to strike an affirmative defense is wholly discretionary. *Conocophillips Co. v. Shaffer*, No. 3:05-CV-7131, 2005 WL 2280393, at *2 (N.D. Ohio 2005) ("Rule 12(f) permits the Court to act with discretion in that it *may* strike irrelevant and superfluous defenses or let them stand. There is absolutely no harm in letting them remain in the pleadings if, as the Plaintiff contends, they are inapplicable.") (emphasis in original).

**1**

Defendants' second affirmative defense of duress and fourteenth affirmative defense of business compulsion are both without merit. Because business compulsion is "the defense of economic duress," *General Motors Corp. v. Paramount Metal Prod. Co.*, 90 F. Supp. 2d 861, 875 (E.D. Mich. 2000), the two defenses will be addressed together.

In order to prevail on a claim for duress, "the defendants to a breach of contract action must establish that they were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes." *Nw. Michigan Law Firm, P.C. v. McLain*, No. 283775, 2010 WL 1255814, at *2 (Mich. Ct. App. Apr. 1, 2010). Duress exists "when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." *Beachlawn Bldg. Corp. v. City of St. Clair Shores*, 121 N.W.2d 427, 429–30 (Mich. 1963) (quoting *Hackley v. Headley*, 8 N.W. 511, 512–

13 (Mich. 1881)); *see also Edwards Publ'ns, Inc. v. Kasdorf*, No. 281499, 2009 WL 131636, at *2 (Mich. Ct. App. Jan. 20, 2009).

Likewise, "[i]n order to void a contract on the basis of economic duress, the wrongful act or threat must deprive the victim of his unfettered will." *Id.* (quoting *Hungerman v. McCord Gasket Corp.*, 473 N.W.2d 720, 721 (Mich. Ct. App. 1991)). Importantly, "[f]ear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully." *Farm Credit Servs. of Michigan's Heartland, PCA v. Weldon*, 591 N.W.2d 438, 447 (Mich. Ct. App. 1998).

Defendants' allegations do not satisfy these requirements. They have alleged no unlawful actions on the part of Plaintiffs; instead only the breach of contractual obligations. Further, any claim that Defendants' "unfettered will" was overcome is untenable. Although they may have received the former pharmacy contracts only days before closing, Defendants were always free to refuse to sign the APAs. And they were represented by counsel throughout negotiations. Michigan courts have found such circumstances enough to bar the defense of duress. *See Hungerman*, 473 N.W.2d at 721 ("Plaintiff was free to refuse to sign the release. Further, plaintiff consulted an attorney before signing. As a matter of law, we hold that plaintiff's claim is barred . . . ." ). Because these defenses cannot succeed under any circumstances, Defendants' affirmative defenses of duress and business compulsion will be stricken.

**2**

Finally, on to Defendants' seventh affirmative defense — that Plaintiffs' breached the duty of good faith and fair dealing. Unlike the other two defenses previously stricken, it would be inappropriate to do so here.

"Without question every contract imposes on each party to the agreement a duty of good faith in the performance and enforcement of the contract." *Reliance Ins. Co. v. Triss Corp.*, No. 06-11548, 2008 WL 1925054, at *3 (E.D. Mich. May 1, 2008) (citing *Stark v. Budwarker, Inc.*, 181 N.W.2d 298 (Mich. Ct. App. 1970)). It is possible that Plaintiffs breached this covenant during the course of their performance under the SFPS Contracts. Therefore, this Court will allow the defense to proceed provided that during discovery the facts support a genuine issue of material fact exists relative thereto.

Plaintiffs argue that this affirmative defense must be dismissed because "Michigan does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing." Pls.' Mot. 15. Maybe so. But Defendants have not pled such a claim; instead, they assert the affirmative defense, which has been recognized by Michigan courts. *See Stark*, 181 N.W.2d at 301, n.7 ("Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.") (citation omitted). Defendants' seventh affirmative defense will not be struck at this juncture.

## IV

Accordingly, it is **ORDERED** that Plaintiffs/Counter-Defendants' motion to dismiss, ECF No. 67, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Defendants/Counter-Plaintiffs' counterclaim for civil conspiracy is **DISMISSED** with prejudice, and Defendants/Counter-Plaintiffs' second and fourteenth affirmative defenses — duress and business compulsion — are **STRICKEN**.

Dated: April 9, 2013              s/Thomas L. Ludington
                                  THOMAS L. LUDINGTON
                                  United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 9, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS
